Green, J.,
delivered the opinion of the Court.
The facts of this case are shortly as follows: On the first of June, 1845, George G. Ware, executed to his daughter, Margaret L. Kneeland, then the wife of Ira C. Kneeland, a deed of gift of four negro slaves, “to the separate use and behoof of her the said Margaret L. Kneeland, apart from the control of her husband, and free and discharged from his debts and liabilities, at this time existing, or hereafter to be contracted; also one piano forte, to hold said slaves and piano to her own use during her, the said Margaret’s natural life, then to whomsoever the said Margaret may by deed or will duly executed appoint or devise, and in default of such appointment, then to the heirs of the said Margaret forever,” *495 &c. Mrs. Kneeland died, her husband surviving, without having made any appointment, and without issue. Ira C. Knee-land is also dead, having in his lifetime conveyed said slaves to the defendant Sharp.
The father of said Margaret has administered on her estate, and he, together with the brothers and sisters of said Margaret, are complainants in this bill.
The question is, whether the marital right of the husband is excluded, by this deed, altogether, or only suspended during the coverture.
It is insisted, for the defendant, that an absolute power of disposition is conferred on the wife, which is' inconsistent with the limitation of the estate to her for life only; that she therefore took the entire estate, and as there are no words excluding the husband’s right after the coverture shall cease, as a matter of course, he became owner of the property after her death.
The deed confers on Mrs. Kneeland, an estate for and “during her natural life, and then, to whomsoever she may by deed or will duly executed, appoint.”
Her power of disposition is here restrained to two modes only — by deed or will. For when property is given to a married woman, to her separate use, and a mode of disposition is prescribed in the instrument creating the estate — the settled law of this court is, that the feme covert is restricted to the mode of disposition so indicated.
Now here, the donee takes the property for life and then she may dispose of it by deed or will. Here are two restrictions: First, she has no authority to dispose of the property during her life. Her father intended it for her use and support during life, and did not intend to permit her to sell it, and deprive herself of that provision for her maintenance, which his affection and providence "had made. In the next place, if the estate had been vested in her with unlimited power of dis *496 position, she might have disposed of the piano forte, by verbal sale or gift and delivery; and the statute only requires that the sale of slaves shall be in writing, and does not make a deed necessary. But by the instrument under consideration, the donee can only dispose of the property, to take effect after her death, and that disposition must be by deed or will; so that her power of disposition is not unlimited, and inconsistent with the life estate given her.
2d. But it is said that the use of the word “heirs,” in default of appointment, is a word of limitation, having a technical meaning, which will control all other evidences of intention, and carries to the first taker the entire estate, under the rule in Shelly’s case. If our present inquiry were confined to the consideration of the quantity of estate which was vested in Mrs. Kneeland, there would be much force in this position, and it would be difficult to avoid the application of the case of Polk vs. Farris, 9 Yerg. R., for although the word “heirs,” as applied to personal estate, is not a technical expression, to denote those who take in succession; yet it has been held to have the same force as “executor or administrator,” in determining the quantity of estate conveyed. But our present inquiry is as to the intent of the settler, as to the marital rights of the husband, for if that intent be to exclude him altogether, it is a matter of no concern, whether the wife took the entire estate, or only a life estate. Now in arriving at the intent, we are to look at the whole instrument. We see that the wife is only to have a life estate — that she cannot sell or dispose of the property during life — that she can only make an appointment by deed or will — and that in default of appointment, it is to go to her “heirs.”
It is plain that the word “heirs,” is not used in this deed technically, as it is a conveyance of personal estate, and the defendants must insist, that it shall have another than a technical signification, in order to give effect to the rule in Shelly’s *497 case, viz : that it shall have the same force as the words “executor or administrator.” As, therefore, another than a technical meaning must be given, we think the word as here used is to be understood, in its common signification, to mean, “the blood relations of the wife,” who, the settler intended, in default of appointment, should take the property, in exclusion of the husband. It is not to be understood to mean those persons who would stand in the relation to Mrs. Kneeland of “heirs” at her death, who are to take personally, as purchasers, under the designation of “heirs;” but it means, her next of kin. The settler intended in default of appointment, that those blood relations, on whom the law would cast an intes • tate’s personal estate, should take this property.
The rule in Shelly’s case is, that when the word “heirs” is used in a conveyance or devise, so as to mean the whole class of those on whom the descent may be cast, however remote, it is a word of limitation, and not of purchase; and the first taker has the entire estate, no matter how clearly the intention may appear that he should take a less estate. Such intention is disregarded, because the courts affix to the word “heirs,” an artificial sense, from which they deduce a general intention, inconsistent with the particular intention, no matter how clearly expressed, and which particular intention is thereby frustrated.
But here the question is not what quantity of estate Margaret L. Kneeland took by this deed, but it is, whether it was the intention of the settler to exclude the husband’s marital rights altogether. In such case, the word “heirs,” has no artificial meaning — it is not used technically — and in determining the sense in which it is used, we are to look at the whole context of the instrument. And in doing so, we do not doubt the intention to exclude the husband.
In this view of the subject, we are fully supported. 2 Hawks’ R., 472.
*498 We think, therefore, the next of kin of Margaret L. Knee-land is entitled under this deed. The Chancellor decreed in favor of the brothers and sisters of Margaret Kneeland, instead of her father, and therefore, we think, erred; but as Sharp, the defendant, only prosecutes this writ of error, we order that the decree be reversed, and the cause remanded, to the end, that such decree may be entered, as the complainants, among themselves, may desire — that the defendant deliver up the slaves, and account for hire.